IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA,

Plaintiff,

V.  CRIMINAL CASE NO. 4:17-CR-131-DMB-JMV

SCOTT E. NELSON,

Defendant.

**ADDENDUM TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL**

The Defendant, Dr. Scott Nelson, offers this additional information and authorities in support of his Motion for Judgment of Acquittal and/or New Trial, specifically as it relates to Dr. Nelson's request for a new trial:

**Background**

On April 4, 2022, Dr. Nelson was found guilty of one count of conspiracy to commit healthcare fraud and seven counts of healthcare fraud. Less than two weeks after Dr. Nelson's trial, on April 12, 2022, the Centers for Medicare & Medicaid Services ("CMS") issued its revocation letter to Dr. Nelson, advising that his Medicare privileges were being revoked effective April 4, 2022 due to the jury's verdict and pursuant to 42 C.F.R. § 424.535(a)(3).[1] *See*

---

[1] 42 C.F.R. § 424.535(a)(3) explains, in relevant part, that:

> CMS may revoke a currently enrolled provider or supplier's Medicare enrollment and any corresponding provider agreement or supplier agreement for the following reasons:
>
> …
>
> (i) The provider, supplier, or any owner or managing employee of the provider or supplier was, within the preceding 10 years, convicted (as that term is defined in 42 CFR 1001.2) of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries.
>
> (ii) Offenses include, but are not limited in scope or severity to—

1

Exhibit A. CMS also advised that it would add Dr. Nelson to the CMS Preclusion List. On April 25, 2022, Dr. Nelson filed his Motion for Judgment of Acquittal and/or New Trial, [Doc. 318], and accompanying Memorandum. [Doc. 318-1]. Shortly after filing his Motion, Dr. Nelson appealed CMS's decision. On May 17, 2022, "[a]fter further review of the specific facts and circumstances of this matter," CMS rescinded its revocation of Dr. Nelson's Medicare privileges. *See* Exhibit B. By letter dated May 31, the CMS Center for Program Integrity confirmed CMS's rescission of its initial determination, restoration of Dr. Nelson's Medicare enrollment, and advising that Dr. Nelson would not be added to the CMS Preclusion List. *See* Exhibit C.

Here, CMS's ultimate determination, via its rescission letter, that Dr. Nelson committed no regulatory violation to warrant a revocation of his Medicare privileges is newly discovered evidence, warranting a new trial in the interests of justice.

**Legal Standards**

**I.     Motion for New Trial Based on Newly Discovered Evidence**

Federal Rule of Criminal Procedure 33 allows a trial court to "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Motions for new

---

(A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.

(B) Financial crimes, such as extortion, embezzlement, income tax evasion, insurance fraud and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.

(C) Any felony that placed the Medicare program or its beneficiaries at immediate risk, such as a malpractice suit that results in a conviction of criminal neglect or misconduct.

(D) Any felonies that would result in mandatory exclusion under section 1128(a) of the [Social Security] Act.

(iii) Revocations based on felony convictions are for a period to be determined by the Secretary, but not less than 10 years from the date of conviction if the individual has been convicted on one previous occasion for one or more offenses.

Section 1128(a) of the Social Security Act (the "Act") is used interchangeably with 42 U.S.C. § 1320a–7(a).

trial are generally disfavored and must be reviewed with great caution. *United States v. Gresham*, 118 F.3d 258, 267 (5th Cir.1997) (citing *United States v. Jaramillo*, 42 F.3d 920, 924 (5th Cir.1995), and *United States v. Peña*, 949 F.2d 751, 758 (5th Cir.1991)).

**Law and Argument**

    **I.    The Court should grant a new trial because the newly discovered evidence — CMS's determination — satisfies the *Berry* test.**

To receive a new trial for newly discovered evidence, a defendant must satisfy the *Berry* test, meeting each of the following five requirements: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to the defendant's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal. *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004); *see Berry v. Georgia*, 10 Ga. 511 (1851). The motion must be denied if the defendant fails to demonstrate *any* one factor. *Jaramillo*, 42 F.3d at 924–25. Here, CMS's rescission letter reflecting its determination of no regulatory violation — and therefore no wrongdoing on Dr. Nelson's part — satisfies each requirement of the *Berry* test.

  **A. Newly Discovered Evidence Unknown at Trial**

Under the first *Berry* factor, CMS's determination that there was no regulatory violation was unknown at trial. Rather, the jury's April 4, 2022 guilty verdicts served as the triggering event for CMS to initially revoke Dr. Nelson's Medicare privileges; however, after Dr. Nelson appealed CMS's initial findings, CMS then reviewed the specific facts and circumstances of Dr. Nelson's case, and determined that Dr. Nelson committed no act — despite his conviction— to justify an exclusion under the Act.

  **B. Due Diligence**

"Evidence that is unknown at the time of trial cannot be the basis for granting a new trial if the defendant should have known of its existence through the exercise of due diligence." *United States v. Wall*, 389 Fo.3d 547, 469 (5th Cir. 2004). With respect to the second *Berry* factor, no amount of due diligence prior to and at trial could reveal that CMS found no regulatory violation. Rather, Dr. Nelson did not become aware of the significance of CMS's determination until *after* his trial and CMS's rescission of its initial revocation.

### C. Nature of the Evidence

As to the third *Berry* factor, cumulative or impeachment evidence normally is not a basis for granting a motion for a new trial. *Id*. (citations omitted). Here, CMS's rescission letter is neither cumulative nor impeachment evidence. Rather, CMS's rescission letter exonerates Dr. Nelson and weighs on several issues before the jury, such as whether Dr. Nelson committed any sort of fraud, signed false certifications, and acted as the certifying physician.

### D. Materiality

Looking at the fourth *Berry* factor, CMS's determination is material to whether Dr. Nelson engaged in healthcare fraud. As alluded to the preceding section, CMS's rescission letter weighs and is material to several issues argued by the Government at trial. At trial, the Government argued that Dr. Nelson engaged in a practice of falsely certifying and robo-signing documentation and assisted several co-conspirators to engage in health care fraud. However, despite the Government's position, CMS — in essence, the victim and party in the best position to determine wrongdoing — issued a rescission letter that is material for two reasons: 1) CMS determined that Dr. Nelson's conviction was not based on the delivery of a health care item or service, which would require a mandatory exclusion; and 2) even after thorough review of the

facts and circumstances, CMS found no wrongdoing to warrant a permissive revocation of Dr. Nelson's privileges.

Under the Act, for CMS to rescind its initial revocation of Dr. Nelson's privileges, it must determine whether its revocation is mandatory or permissive. CMS *must* exclude an individual from participating in a federal health care program if the individual was (1) convicted, under federal or state law, of a felony offense (2) that occurred after August 21, 1996, (3) relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct (4) that was committed in connection with the delivery of a health care item or service. 42 U.S.C. § 1320a-7(a)(3); 42 C.F.R. § 1001.101(c). An individual's criminal conviction in connection with the delivery of a health care item or service can include "the performance of management or administrative services relating to the delivery of such items or services." 42 C.F.R. § 1001.201(a)(1)(i). In order for CMS to exclude Dr. Nelson under the mandatory language of the Act, the felony offense for his conviction must have been for conduct "in connection with the delivery of a health care item or service." Under a plain reading of the Act and corresponding regulations, not all felonies committed by a provider — Dr. Nelson — are subject to mandatory exclusion. Rather, only those that are committed "in connection with" "the delivery of a health care item or service" lead to a mandatory exclusion. Here, by rescinding its initial determination to revoke Dr. Nelson's Medicare privileges, logic dictates that CMS found that his conviction was not in connection with the delivery of a health care item or service, and therefore it found that his revocation was permissive and therefore subject to rescission.

In this case, CMS initially based its revocation decision on Dr. Nelson's April 4 convictions; however, after reviewing all of the relevant facts and circumstances, rather than affirming its decision, it rescinded its initial revocation and restored Dr. Nelson's Medicare

5

privileges. In other words, CMS determined that Dr. Nelson did not act in a way that was detrimental to the best interests of the Medicare program and its beneficiaries. CMS's rescission is highly material, since it could have exercised its discretion to affirm its revocation decision based on the Government's allegations of wrongdoing, such as the Government's allegations of falsely certifying patients (*see* 42 C.F.R. § 424.535(a)(4)); misuse of a billing number (*see* 42 C.F.R. § 424.535(a)(7)); submitting false claims (*see* 42 C.F.R. § 424.535(a)(8); or abusive ordering, referring, of certifying services (*see* 42 C.F.R. § 424.535(a)(21)). However, despite reviewing all of the relevant facts and circumstances and having the opportunity to affirm its determination for multiple alleged violations, it rescinded its decision and restored Dr. Nelson's Medicare privileges.

E.  **Probability of Producing an Acquittal**

With respect to the fifth *Berry* factor, the final question in the analysis asks whether the newly discovered evidence would *probably* have resulted in an acquittal. *Id*. at 471. Here, the Government's case hinged on unestablished allegations of a conspiracy to commit healthcare fraud, as well as accusations that Dr. Nelson engaged in a practice of robo-signing and falsely certifying patients. However, the fact that CMS — effectively the victim in this case — has found no regulatory violation undercuts the Government's position by demonstrating that it found no wrongdoing or regulatory violation necessary to exclude Dr. Nelson. Had this determination been known before or at trial, the evidence would probably have resulted in an acquittal, since it completely counters each of the Government's contentions as presented to the jury. In other words, CMS's rescission letter (and therefore CMS's position) inserts reasonable doubt as to any alleged wrongdoing on Dr. Nelson's part, which the jury could not consider during trial.

**Conclusion**

For the reasons stated above, as well as those reasons discussed in his Motion and corresponding Memorandum in Support of Motion for Judgment of Acquittal and/or New Trial, the Court should order a new trial.

Respectfully submitted this the 26th day of October 2022.

*/s/Arthur H. Calderón*
Arthur H. Calderón, MSB 103917
ATTORNEY FOR DEFENDANT

*/s/Philip Mansour, Jr.*
Philip Mansour, Jr., MSB 1857
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby further certify that I have on this day electronically filed said

ADDENDUM TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

with the Clerk of the Court using the ECF filing system on October 26, 2022, which presumably will send notification of such filing to Assistant United States Attorneys Clayton A. Dabbs, Kimberly M. Hampton, and all other attorneys as may have entered an appearance in this cause.

So certified, this the 26th day of October 2022.

>*/s/Arthur H. Calderón*
>Arthur H. Calderón, MSB 103917
>ATTORNEY FOR DEFENDANT
>
>*/s/Philip Mansour, Jr.*
>Philip Mansour, Jr., MSB 1857
>ATTORNEY FOR DEFENDANT